UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEAST DIVISION

| | |
|---|---|
| FERGUSON MEDICAL GROUP, L.P., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| MISSOURI DELTA MEDICAL CENTER, ) | |
| ) | |
| Serve: ) | |
| ) | |
| Charles D. Ancell, President ) | |
| 1008 North Main St. ) | |
| Sikeston, MO 63801 ) | Cause No: |
| ) | |
| ROBERT SCOTT MATTHEWS, ) | Division No. |
| ) | |
| Serve at: ) | JURY TRIAL DEMANDED |
| 1020 North Ranney St. ) | |
| Sikeston, MO 63801 ) | |
| ) | |
| and ) | |
| ) | |
| CHARLES D. ANCELL, ) | |
| ) | |
| Serve at: ) | |
| 205 Goldbriar Drive ) | |
| Sikeston, MO 63801 ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

Plaintiff Ferguson Medical Group, L.P., for its Complaint against defendants Missouri Delta Medical Center, Robert Scott Matthews, and Charles D. Ancell, states as follows:

**PRELIMINARY STATEMENT**

1. This is a private antitrust action brought pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, to redress Defendants' anticompetitive actions to restrain competition for

provision of certain medical and diagnostic services in Sikeston, Missouri and adjoining areas, the effects of which are to increase patient costs, reduce the quality of care available to local patients, and control local patients' ability to choose their providers of medical care.

## PARTIES

2. Plaintiff Ferguson Medical Group, L.P. ("FMG") is a Limited Partnership organized and existing under the laws of the State of Missouri.

3. FMG, through its limited partners and other employees provides certain healthcare services in Scott County, Missouri and surrounding areas, including ancillary services and outpatient diagnostic and surgical services. The limited partners of FMG are licensed physicians who have service contracts with FMG who practice in family medicine and general internal medicine, as well as a variety of medical specialties and sub-specialties. FMG contracts with third-party commercial payers to provide certain medical services to members as well as residents with direct medical insurance coverage or access to Medicare and/or Medicaid reimbursement in Scott County and limited adjacent areas, and it also contracts with major employers in such areas to provide occupational medicine services and certain other services to their employees.

4. FMG has established good will, significant patient and referral bases, patient lists and records, all of which are valuable property of the Limited Partnership, earned and developed over time by the expenditure of time and effort by staff, management, and the limited partners of FMG.

5. Defendant Missouri Delta Medical Center ("MDMC") is a benevolent corporation, with its headquarters and principal place of business in Sikeston, Missouri in Scott County, Missouri. MDMC may be served by serving its President, Charles D. Ancell. MDMC

owns and operates the only full-service, acute care hospital in Scott County, Missouri.

6. Defendant Robert Scott Matthews ("Matthews") is a resident of Scott County, Missouri and currently serves as a member of the Board of Directors of MDMC. Matthews previously served as Chairman of the Board Executive Committee of MDMC from January, 2002 through January, 2004.

7. Defendant Charles D. Ancell ("Ancell") is a resident of Scott County, Missouri and has served as the President and CEO of MDMC since 1991.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, 28 U.S.C. § 1337, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9. Venue is proper under Section 12 of the Clayton Act, 15 U.S.C. § 22 and pursuant to 28 U.S.C. § 1391(a) (1), because Defendants reside, are found in and conduct substantial business in this judicial district. Venue is also proper under 28 U.S.C. § 1391(a) (2) because Defendants' anticompetitive conduct giving rise to this action occurred in this judicial district.

## INTERSTATE COMMERCE

10. All parties to this action are engaged in an industry affecting interstate commerce. MDMC provides acute care hospital services and ambulatory surgical services in Missouri, including services provided to some residents of Illinois. These services include the provision or purchase of substantial goods and services in interstate commerce, including medical supplies and equipment, medical services, and pharmaceuticals. FMG provides limited medical services, including ancillary services and outpatient diagnostic and surgical services in Missouri. These services include the provision or purchase of substantial goods and services in interstate commerce, including medical supplies and equipment, medical services, and pharmaceuticals.

MDMC is paid for its services, in part, with Medicare, Medicaid, and medical insurance payments from outside the State of Missouri. Accordingly, the unlawful acts alleged herein involve, affect, and occur in the flow of interstate commerce. In addition, the medical services affected by the unlawful acts charged in this Complaint also involve and affect interstate commerce in a not insubstantial manner.

## MARKET BACKGROUND

11. The Product Market at issue in this case is ancillary medical services and outpatient diagnostic and surgical services ("Product Market").

12. The Geographic Market at issue includes the areas from which 80-90% of MDMC and FMG's patients come for services within the Product Market. This Geographic Market compromises: portions of Scott County from Sikeston South, adjacent portions of Mississippi County, New Madrid County, and small adjoining areas in Illinois and Kentucky. (the "Geographic Market").

13. As the owner and operator of the only hospital in Scott County, Missouri, MDMC Missouri holds a dominant position in acute care hospital services in Scott County and limited parts of surrounding counties comprising the Geographic Market. MDMC is the dominant provider of ancillary medical services and outpatient diagnostic and surgical services in Scott County, from Sikeston south, and limited parts of Mississippi County, New Madrid County, and adjoining areas in Southern Illinois and Kentucky. The closest acute care hospital facilities to MDMC are located in Cape Girardeau and Poplar Bluff, Missouri, but these are neither realistic nor accessible alternatives to MDMC. Medicare and Medicaid patients in the Geographic Market lack means of transportation and the substantial majority of patients within the Geographic Market do not travel to other facilities for the services within the Product Market.

14. Barriers to entry by a new competitor in the market for ancillary medical services and outpatient diagnostic and surgical services in the Geographic Market are high. These barriers include state licensing requirements, extremely high initial and ongoing capital investment costs, and the lock-up of important segments of the outpatient diagnostic and surgical services market by MDMC through direct employment of or exclusive contracts with a limited number of available physicians, physician alignment, and exclusive contracts with major employers for Product Market services in the Geographic Market.

15. Historically, FMG has competed to provide certain basic ancillary services such as medical laboratory and testing services and x-ray services. Within the past five years, FMG began competing and/or preparing to compete for the provision of other ancillary medical services, including outpatient diagnostic and surgical services, particularly imaging services (MRI, CT, X-ray), minor urgent care services, and limited ambulatory surgical procedures. MDMC engaged in conduct to interfere with FMG's retention and/or recruitment of specialty surgeons to provide specialty and sub-specialty surgical specialty, and diagnostic services in the Geographic Market, and to provide the other ancillary services in which FMG was competitive or sought to become competitive.

## DEFENDANTS' PREDATORY AND ANTI-COMPETITIVE CONDUCT

16. In its effort to dominate the market and eliminate competition, MDMC has engaged in numerous predatory and anti-competitive acts.

17. Defendants Matthews and Ancell explicitly expressed MDMC's edict that FMG would no longer serve as a multi-specialty group and threatened FMG not to "get in the way." They requested FMG to conform to MDMC's "vision" of FMG as limited to "a primary care clinic." Another representative of MDMC, Dr. Linza Killion, told FMG's physicians that, "Our

vision of FMG is for it to be exclusively a primary care facility". Other representatives of MDMC have stated "We will see who controls healthcare in Sikeston." Matthews has stated his specific intent to "bust up" FMG. Ancell informed state officials in certificate of need proceedings for imaging facilities, that "FMG is busting up. . . there is no need for us to attend the hearing." At various times, Matthews and Ancell have said that they "intend to put FMG out of business".

18.    In 2000 and 2001 and continuing to date, MDMC specifically began its campaign to disrupt and eliminate FMG and to divert FMG's patient base through improper and unlawful means, including but not limited to termination of call contracts with FMG, discrimination against FMG in recruiting, peer review, and credentialing matters, withholding coverage for FMG physicians, restriction of patient referrals to competitors of MDMC, and inducement of FMG limited partners of FMG to breach their fiduciary duties and contracts with FMG.

19.    Upon information and belief, MDMC has entered into anticompetitive exclusive contracts with major employers in the market, including Noranda (the largest employer in Scott County), which foreclose competitors from providing occupational medicine services to substantial numbers of patients who are required under these agreements to utilize MDMC. (In the case of Noranda, the exclusive arrangement coincided with MDMC's appointment of Keith Gregston, the General Manager of Noranda, to MDMC's board of directors.) Consequently, competitors are foreclosed from a quantitatively significant share of significant segments of the Product Market.

20.    MDMC entered into an agreement and conspired with Defendants Matthews and Ancell and other MDMC affiliated physicians to foreclose competition by limiting the number of patient referrals to FMG and other competitors.

6

21.    MDMC and Defendants Matthews and Ancell have applied the credentialing process in an illegal and discriminatory manner, refusing to grant full staff privileges to some non-MDMC physicians, including but not limited to Dr. Douglas Gotlin and Dr. Charles Liggett, or discriminating against them by arbitrarily and unreasonably applying onerous and burdensome requirements for staff privileges which were not enforced against non-FMG physicians. As a specific example, after FMG surgeon Dr. Charles Liggett had been performing surgery at MDMC for six (6) months, MDMC arbitrarily enforced a requirement that he have a "preceptor" for each surgery and then Matthews and Ancell conspired with MDMC and every staff surgeon to refuse to serve as a preceptor for Dr. Liggett. MDMC and Defendants Matthews and Ancell have further engaged in a campaign to intimidate physicians with staff privileges at MDMC from referring patients to MDMC competitors. Matthews and Ancell have committed the resources of MDMC, a non-profit entity, without meaningful Board review to make excessive recruitment package offers.

22.    MDMC and Defendants Matthews and Ancell conspired to unlawfully and intentionally interfere with and induce breach of contracts held by Drs. Loring Helfrich, Anthony Poole, Fred Thornton, Fred Uthoff, and Kevin Rankin, who were former limited partners of FMG. Defendants, in a veiled attempt to avoid inducing breaches of FMG physician contracts, employed third persons as conduits to solicit their employment with MDMC.

23.    MDMC and Defendants Matthews and Ancell made disparaging and defamatory statements and misrepresentations about FMG and its physicians to patients, employers, and new physicians being recruited for employment in Scott County, including threats to put FMG's specialty physicians out of business.

24.    MDMC and Defendants Matthews and Ancell have attempted to interfere in

Certificate of Need hearings, including the hearing related to FMG's purchase of imaging equipment, by asserting frivolous misrepresentations to the Missouri Health Facilities Review Committee, including the statement referenced in paragraph 17 above.

25. MDMC terminated its service call arrangement with competitors, including FMG, which involved coverage of patients who presented to MDMC without a regular physician, thereby further restricting patient referrals and the ability of FMG physicians to perform services within the Product Market.

## COUNT I – ATTEMPT TO MONOPOLIZE (15 U.S.C. § 2)

26. MDMC deliberately and intentionally caused certain physician employees of FMG, including Dr. Al Kalani and Dr. Salmmat, to breach their employment agreements with FMG and to work instead for MDMC.

27. Plaintiff restates and re-alleges paragraphs 1-26, as if fully set forth herein.

28. MDMC has engaged in the predatory and anticompetitive conduct set forth above with the specific intent of obtaining monopoly power in the relevant market and with the specific intent of excluding competitors from the relevant market, including FMG.

29. There is a real and dangerous probability of MDMC's success in obtaining or maintaining monopoly power due to its market share, high barriers to entry, the lack of significant competition in the relevant market, and its predatory conduct. As such, MDMC's conduct is an attempt to monopolize the market for ancillary medical services and outpatient diagnostic and surgical services in violation of 15 U.S.C. § 2.

30. MDMC's attempt to obtain monopoly power has resulted in injury to competition in the relevant market and injury to FMG's ability to compete in the relevant market, including but not limited to elimination of the benefits that FMG provided to consumers: lower prices, greater customer choice, and higher quality service.

31. Success of the conspiracy in restricting referrals to FMG and MDMC's ability to foreclose a substantial portion of the market through illegal exclusive contracting demonstrates MDMC's power to exclude competition.

WHEREFORE, plaintiff requests that judgment be entered in its favor and against the Defendants as follows:

   a. For damages, in an amount to be determined and to be trebled pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, attorney's fees and costs;

   b. For all damages incurred by plaintiff as a result of defendants' wrongful conduct, in an amount to be proven at trial, including interest;

   c. For an injunction against defendants in such form as this Court may deem just and proper restraining violations by Defendants of the antitrust laws of the United States as described in the Complaint;

   d. For plaintiff's reasonable attorney's fees, costs and expenses; and

   e. For such other and further relief as this Court may deem just and proper.

## COUNT II – CONSPIRACY TO MONOPOLIZE (15 U.S.C. § 2)

32. Plaintiff restates and re-alleges paragraphs 1-31 as if fully set forth herein.

33. In furtherance of MDMC's willful intention to acquire and maintain monopoly power, MDMC acted in concert with Defendants Matthews and Ancell with the intent of suppressing, inhibiting and destroying competition in the relevant market. Matthews and Ancell operated outside the scope of their authority and failed to make full disclosure of their conduct and objectives to the full MDMC Board.

34. MDMC, with the agreement and assistance of Defendants Matthews and Ancell, willfully engaged in the predatory and anticompetitive conduct set forth above in an attempt to acquire monopoly power, and, as a result, there is a real and dangerous probability that MDMC will succeed in acquiring monopoly power.

35. The conspiracy and anticompetitive acts of MDMC and Defendants' Matthews and Ancell has directly resulted in harm to competition in the relevant market and injury to FMG's ability to compete in the relevant market.

WHEREFORE, plaintiff requests that judgment be entered in its favor and against the Defendants as follows:

   a. For damages, in an amount to be determined and to be trebled pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, including attorney's fees and costs;

   b. For all damages incurred by plaintiff as a result of defendants' wrongful conduct, in an amount to be proven at trial, including interest;

   c. For an injunction against defendants in such form as this Court may deem just and proper restraining violations by Defendants of the antitrust laws of the United States as described in the Complaint;

   d. For plaintiff's reasonable attorney's fees, costs and expenses; and

   e. For such other and further relief as this Court may deem just and proper.

### COUNT III – ATTEMPT TO MONOPOLIZE (Section 416.031, RSMo)

36. Plaintiff restates and re-alleges paragraphs 1-35 as if fully set forth herein.

37. MDMC's predatory and anti-competitive conduct, as set forth above, with the specific intent of obtaining monopoly power in the relevant market and with the specific intent of excluding competitors from the relevant market, including FMG, constitutes an unlawful attempt to monopolize trade or commerce in the State of Missouri, in violation of Section 416.031, RSMo.

38. The predatory and anticompetitive acts of MDMC have directly resulted in harm to competition in the relevant market and injury to FMG's ability to compete in the relevant market.

39. MDMC's conduct was outrageous because of its evil motive and/or reckless indifference to the rights of the plaintiff.

40. An award of punitive damages is required to deter MDMC and others from like conduct.

WHEREFORE, plaintiff requests that judgment be entered in its favor and against the Defendants as follows:

    a. For all damages incurred by plaintiff as a result of defendants' wrongful conduct in an amount to be proven at trial, including punitive damages and interest;

    b. For an injunction against defendants in such form as this Court may deem just and proper restraining violations by Defendants;

    c. For plaintiff's reasonable attorney's fees, costs, and expenses; and

    d. For such other and further relief as this Court may deem just and proper.

## COUNT IV – CONSPIRACY TO MONOPOLIZE (Section 416.031, RSMo)

41. Plaintiff restates and re-alleges paragraphs 1-40 as if fully set forth herein.

42. In furtherance of MDMC's willful intention to acquire and maintain monopoly power, MDMC acted in concert with Defendants Matthews and Ancell with the intent of suppressing, inhibiting and destroying competition in the relevant market.

43. MDMC, with the agreement and assistance of Defendants Matthews and Ancell, willfully engaged in the predatory and anticompetitive conduct set forth above in an attempt to acquire monopoly power, and, as a result, there is a real and dangerous probability that MDMC will succeed in acquiring monopoly power.

44. The conspiracy and anticompetitive acts of MDMC and Defendants' Matthews and Ancell has directly resulted in harm to competition in the relevant market and injury to FMG's ability to compete in the relevant market.

45. MDMC's conduct was outrageous because of its evil motive and/or reckless indifference to the rights of the plaintiff.

46. An award of punitive damages is required to deter MDMC and others from like conduct.

WHEREFORE, plaintiff requests that judgment be entered in its favor and against the Defendants as follows:

    a. For all damages incurred by plaintiff as a result of defendants' wrongful conduct in an amount to be proven at trial, including punitive damages and interest;

    b. For an injunction against defendants in such form as this Court may deem just and proper restraining violations by Defendants;

    c. For plaintiff's reasonable attorney's fees, costs, and expenses; and

    d. For such other and further relief as this Court may deem just and proper.

## COUNT V - TORTIOUS INTERFERENCE

47. Plaintiff restates and re-alleges paragraphs 1- 46 as if fully set forth herein.

48. At all times relevant hereto, MDMC and defendants Ancell and Matthews knew that Drs. Loring Helfrich, Anthony Poole, Fred Thornton, Fred Uthoff, and Kevin Rankin were limited partners of FMG. MDMC also knew that the FMG Limited Partnership Agreement contained a restrictive covenant prohibiting practice for two years within 40 miles of FMG, subject to certain waiver provisions that these doctors could not meet without a contribution or loan from MDMC.

49. Defendants Ancell and Matthews, with the intent of causing financial hardship to

FMG and diminishing FMG's good will in the Hospital and community, approached Drs. Helfrich, Poole, Thornton, Uthoff and Rankin individually to induce them to breach their fiduciary duty to the limited partners of FMG and to become employees of MDMC.

50. MDMC knew that FMG had a proprietary right in its patient and referral base and in the good will obtained by patients including obstetrical patients, internal medicine patients, and surgical patients.

51. As a result of the creation of its good will and its patient base, FMG had a reasonable expectation of future patient relationships and future business relationships with other physicians and health care providers in the community. For more than twenty years in its existence as a multi-specialty practice, FMG received gross income from intragroup referrals to Drs. Poole, Uthoff, Rankin, Thornton and Helfrich and had a reasonable expectation of future referrals such that the income from surgery, obstetrics, and/or internal medicine would remain within FMG.

52. Moreover, FMG benefited from patient referrals from non-FMG physicians, agencies, and other health care providers who referred internal medicine patients in need of specialized treatment to Drs. Uthoff, Poole, Rankin, Thornton, and Helfrich. FMG had an expectation of continuing to receive that benefit.

53. In fact, MDMC contracted with FMG for coverage of patients who presented to MDMC without a regular physician, from which FMG obtained intragroup referrals, including to Drs. Uthoff, Poole, Rankin, Thornton, and Helfrich. MDMC has terminated this service call agreement. FMG had a reasonable expectation of the continuation of these referrals.

54. MDMC was aware of the Limited Partnership Agreement, and intended to induce these specific doctors to terminate their relationship with FMG.

55. MDMC and Defendants Ancell and Matthews conspired to wrongfully and intentionally interfere with the agreement between FMG and each above-named doctor by soliciting these doctors for employment and inducing them to breach their physicians' contract with FMG and their fiduciary duties owed to the limited partners.

56. MDMC's interference with the agreement between FMG and these named doctors caused the breach of the agreement and breach of the above-named doctors' fiduciary duties. But for MDMC's interference, the Limited Partnership Agreement would not have been breached by these doctors.

57. MDMC has furthermore impeded recruitment of new specialty physicians to FMG to replace those who breached their agreement to obtain employment with MDMC.

58. MDMC's tortious conduct was not justified by any legitimate purpose and was instead motivated by their specific intent and desire to obstruct and impair FMG's medical services and to eliminate competition.

59. As a direct and proximate result of MDMC's actions, FMG has been damaged in the loss of profits from internal and external referrals as well as unreimbursed overhead expense.

60. MDMC's conduct was outrageous because of its evil motive and/or reckless indifference to the rights of the plaintiff.

61. An award of punitive damages is required to deter MDMC and others from like conduct.

WHEREFORE, plaintiff requests that judgment be entered in its favor and against the Defendants as follows:

    a. For all damages incurred by plaintiff as a result of defendants' wrongful and tortious conduct in an amount to be proven at trial, including punitive damages and interest;

    b. For an injunction against defendants in such form as this Court may deem

    just and proper restraining Defendants from engaging in such tortious conduct;

  c. For plaintiff's reasonable attorney's fees, costs, and expenses; and

  d. For such other and further relief as this Court may deem just and proper.

## COUNT VI – DEFAMATION

62. Plaintiff restates and re-alleges paragraphs 1-61 as if fully set forth herein.

63. MDMC, either directly or through agents and employees, made the following statements to third parties:

  a. MDMC told the Missouri Health Commission that FMG was "busting up" and therefore, it would not oppose FMG's request for imaging equipment.

  b. Defendants Matthews and Ancell told physicians being recruited to Sikeston that FMG was going to be put out of business.

64. The defendants' statements about FMG were false and defamatory.

65. The defendants' statements about FMG injured the business reputation of FMG and professional reputations of its members.

66. FMG was damaged thereby.

67. There was no justification for the MDMC's statements set forth above.

68. MDMC's conduct was outrageous because of its evil motive and/or reckless indifference to the rights of the plaintiff.

69. An award of punitive damages is required to deter MDMC and others from like conduct.

WHEREFORE, plaintiff requests that judgment be entered in its favor and against the Defendants as follows:

  a. For all damages incurred by plaintiff as a result of defendants' wrongful conduct in an amount to be proven at trial, including punitive damages and interest;

    b.    For an injunction against defendants in such form as this Court may deem just and proper restraining violations by Defendants;

    c.    For plaintiff's reasonable attorney's fees, costs, and expenses; and

    d.    For such other and further relief as this Court may deem just and proper.

## COUNT VII - CIVIL CONSPIRACY

70. Plaintiff restates and re-alleges paragraphs 1-69 as if fully set forth herein.

71. MDMC and Defendants Matthews and Ancell, with a unity of purpose, common design and/or meeting of the minds, reached an agreement or understanding to commit the unlawful acts set forth in the preceding Counts.

72. The objective of defendants was unlawful and led to financial benefit.

73. The acts of defendants described in the preceding Counts were knowingly undertaken to further or carry out the unlawful purposes of the conspiracy.

74. Defendants each had an independent stake in achieving the object of the conspiracy.

75. As a direct and proximate result of the defendant's conduct, plaintiff suffered harm.

76. Defendants' conduct was outrageous because of their evil motive and/or reckless indifference to the rights of the plaintiff.

77. An award of punitive damages is required to deter defendants and others from like conduct.

WHEREFORE, the plaintiff requests that judgment be entered in its favor and against the Defendants as follows:

    a.    For all damages incurred by plaintiff as a result of defendants' wrongful conduct in an amount to be proven at trial, including punitive damages and interest;

      b.    For an injunction against defendants in such form as this Court may deem just and proper restraining violations by Defendants;

      c.    For plaintiff's reasonable attorney's fees, costs, and expenses; and

      d.    For such other and further relief as this Court may deem just and proper.

## COUNT VIII – BREACH OF CONTRACT

78. Plaintiff restates and re-alleges paragraphs 1-77 as if fully set forth herein.

79. On or about December 1, 2001, the plaintiff and MDMC entered into a contract, a copy of which is attached and incorporated by reference hereto as Exhibit A ("Contract").

80. Pursuant to the Contract, FMG agreed to schedule certain physicians to provide call coverage and medical services to MDMC emergency room patients who presented without a family physician on staff at MDMC for certain periods of 24 hours. MDMC agreed to compensate FMG for coverage at a rate of $600.00 per 24-hour period. In addition, FMG's physicians who provided such coverage would bill patients directly for the treatment of such patients who were actually seen and/or treated during the coverage period and would also directly bill such patients the fees for follow up visits to FMG.

81. The Contract term was for a period of one year, and the Contract does not provide for its termination prior to the expiration of one (1) year.

82. Between December 1, 2001 and July 1, 1002, MDMC paid to FMG the average sum of $7628.57 per month for coverage; in addition, FMG received significant sums from the direct billing of patients seen by FMG physicians during the coverage period or during follow up visits to FMG.

83. On or about July 1, 2002, MDMC breached the Contract and ceased scheduling FMG physicians under the terms of the Contract and ceased calling on physicians affiliated with FMG, as required by the Contract.

84. MDMC began paying its own employee physicians to admit patients to the hospital, thus avoiding its obligation to FMG under the Contract and further depriving FMG of the additional revenue earned by its physicians from direct billings to patients seen during the call period or in follow-up visits.

85. As a direct result of said breach, FMG has been damaged.

WHEREFORE, plaintiff requests that judgment be entered in its favor and against the Defendants as follows:

   a. For all damages incurred by plaintiff as a result of defendants' breach in an amount to be proven at trial, including punitive damages and interest;

   b. For plaintiff's reasonable attorney's fees, costs, and expenses; and

   c. For such other and further relief as this Court may deem just and proper.

### JURY TRIAL DEMAND

86. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff respectfully requests a jury trial for all issues raised in this Complaint which are triable to a jury.

Respectfully submitted,

BY: /s/Jay A. Summerville
    Jay A. Summerville              #4502
    Glenn E. Davis                  #2940
    William M. Corrigan, Jr.        #2879
    *Attorneys for Plaintiffs*
    ARMSTRONG TEASDALE LLP
    One Metropolitan Square, Suite 2600
    St. Louis, Missouri 63102-2740
    (314) 621-5070
    (314) 621-5065 (facsimile)
    jsummerville@armstrongteasdale.com
    gdavis@armstrongteasdale.com
    wcorrigan@armstrongteasdale.com