UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| FERGUSON MEDICAL GROUP, L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:06CV8 CDP |
| MISSOURI DELTA MEDICAL CENTER, et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Ferguson Medical Group, L.P. (FMG) brought an eight-count complaint against Missouri Delta Medical Center (MDMC), Robert Scott Matthews, and Charles D. Ancell arising out of the defendants' alleged predatory and anti-competitive conduct. According to FMG, the defendants have conspired to eliminate competition in the market for ancillary medical services and outpatient diagnostic and surgical services in Sikeston, Missouri and select surrounding areas. The defendants now move to dismiss the four antitrust claims raised in FMG's complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. After reviewing the complaint and the parties' briefs, I will grant the defendants' motion because I agree that plaintiff has failed to allege a relevant market.

## Background

FMG is a Missouri Limited Partnership that provides health care services in Scott County, Missouri and surrounding areas. The limited partners of FMG are licensed physicians who practice family medicine and general internal medicine, as well as a variety of medical specialties and sub-specialties. MDMC owns and operates the only full-service, acute care hospital in Scott County, Missouri.

MDMC and FMG compete in the market for ancillary medical services and outpatient diagnostic and surgical services. These services include medical laboratory, testing, and imaging services (MRI, CT, x-ray), minor urgent care services, and limited ambulatory surgical procedures. FMG alleges that MDMC has taken several steps to prevent FMG from competing in the market for these services. These steps include terminating call contracts with FMG, discriminating against FMG in recruiting, peer review, and credentialing matters, withholding coverage for FMG physicians, reducing patient referrals to competitors of MDMC, and inducing the limited partners of FMG to breach their fiduciary duties and contracts with FMG.

FMG's complaint against MDMC, Matthews, and Ancell has eight counts. The first four are antitrust claims: attempt to monopolize and conspiracy to monopolize under both state and federal law. The second four are state tort claims:

tortious interference, defamation, civil conspiracy, and breach of contract.

## Legal Standard

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6), Fed. R. Civ. P.  The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim entitling it to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Young v. City of St. Charles, Missouri, 244 F.3d 623, 627 (8th Cir. 2001).  When considering a motion brought pursuant to Rule 12(b)(6), the factual allegations of a complaint are assumed true and are construed in favor of the plaintiff.  Neitzke v. Williams, 490 U.S. 319, 326 (1989).

A complaint should not be dismissed merely because the court doubts that a plaintiff will be able to prove all the necessary allegations.  Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997).  The issue is not whether the plaintiff will ultimately prevail but whether it is entitled to present evidence to support its claims.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A court should grant a motion to dismiss only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Neitzke, 490 U.S. at

327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

## Discussion

In the first two counts of its complaint, FMG asserts claims of attempted monopolization and conspiracy to monopolize under Section 2 of the Sherman Act, 15 U.S.C. § 2. Counts III and IV of the complaint allege attempted monopolization and conspiracy to monopolize under Missouri's antitrust laws, which are to be construed in harmony with federal antitrust law. Mo. Rev. Stat. § 416.141. To state a claim for attempted monopolization, a plaintiff must allege (1) a specific intent on the part of the defendant; (2) predatory or anticompetitive conduct by the defendant directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success. Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458 (1993). To state a claim for conspiracy to monopolize, a plaintiff must allege (1) a conspiracy; (2) the specific intent to monopolize; and (3) overt acts in furtherance of the conspiracy. SuperTurf, Inc. v. Monsanto Co., 660 F.2d 1275, 1283 (8th Cir. 1981).

The identification of a proper relevant market is a "necessary predicate" to the finding of an antitrust violation. Federal Trade Commission v. Tenet Health Care Corp., 186 F.3d 1045, 1051 (8th Cir. 1999); Flegel v. Christian Hosp., 4 F.3d 682, 691 (8th Cir. 1993). A relevant market has two components: a product market

and a geographic market.  Bathke v. Casey's Gen. Stores, Inc., 64 F.3d 340, 345 (8th Cir. 1995).  The product market refers to "all reasonably interchangeable products," or goods which exhibit a high cross-elasticity of demand.[1]  Double D Spotting Service, Inc. v. Supervalu, Inc., 136 F.3d 554, 560 (8th Cir. 1998) (citation omitted).  The geographic market refers to "the geographic area in which consumers can practically seek alternative sources of the product."  Id. (citations omitted).

The defendants challenge the sufficiency of FMG's allegations on a variety of grounds, including the validity of FMG's proposed product and geographic markets.  For purposes of this motion, I need only address FMG's proposed geographic market.  A geographic market is determined not by where consumers actually go for a particular product or service, but rather by where they could go should the defendants' prices become anticompetitive.  See Federal Trade Commission v. Freeman Hosp., 69 F.3d 260, 269-270 (8th Cir. 1995) (holding that plaintiff failed to meet its burden of establishing relevant market where the plaintiff's evidence spoke only to competitor perception and customer preferences, rather than the question of practicable alternatives for consumers); Bathke, 64 F.3d at 345-47 (same); Morgenstern v. Wilson, 29 F.3d 1291, 1296-97 (8th Cir. 1994) (same).  To make

---

[1]Cross-elasticity of demand is defined as "[a] relationship between two products, usually substitutes for each other, in which a price change for one product affects the price of the other."  Black's Law Dictionary 383 (7th ed. 1999).

this determination, a court must look to the commercial realities faced by consumers.  Davies v. Genesis Medical Center, 994 F. Supp. 1078, 1100 (S.D. Iowa 1998) (citations omitted).   Distance and convenience are important factors to consider, Morgenstern, 29 F.3d at 1297 (citation omitted), as is the type of product or service at issue.  Davies, 994 F. Supp. at 1100 (noting that a consumer may be willing to travel farther for a hospital's specialized services compared to the distance a consumer would travel for general medical services).

Generally, these factors cannot be considered until the parties have had an opportunity to conduct discovery.  Double D, 136 F.3d at 560 (citing Huelsman v. Civic Ctr. Corp., 873 F.2d 1171, 1174 (8th Cir. 1989)).  Nevertheless, because there is no "per se prohibition against dismissal of antitrust claims for failure to plead a relevant market," Double D, 136 F.3d at 560 (citation omitted), courts have not hesitated to dismiss antitrust claims where it is clear that the alleged relevant market is too narrow, implausible, defined solely by franchise agreement, or simply not defined anywhere in the pleadings.  See Rolite, Inc. v. Wheelbrator Environmental Systems, Inc., 958 F. Supp. 992, 997-99 (E.D. Pa. 1997) (discussing numerous cases).

In its complaint, FMG proposes a geographic market that "includes the areas from which 80-90% of MDMC and FMG's patients come." FMG alleges that this

geographic market comprises "portions of Scott County from Sikeston South, adjacent portions of Mississippi County, New Madrid County, and small adjoining areas in Illinois and Kentucky." The defendants maintain that this proposed market is nothing more than an exercise in gerrymandering designed to artificially inflate MDMC's market power by excluding nearby competitors in Cape Girardeau and Poplar Bluff, Missouri. I agree, and conclude that FMG's proposed geographic market is too narrow as a matter of law.

First, it is apparent from simply looking at a map that FMG's proposed market was artfully pled to exclude competitors in Cape Girardeau and Poplar Bluff. Sikeston (population approximately 17,000), the home of MDMC, lies at the confluence of four Missouri counties: Scott County to the north, Mississippi County to the east, New Madrid County to the south, and Stoddard County to the west. The "small adjoining areas in Illinois and Kentucky" referred to in the complaint lie to the east of Mississippi County, over thirty miles from Sikeston. Cape Girardeau (population approximately 36,000) lies on the northern border of Scott County, just over thirty miles north of Sikeston on Interstate 55. Poplar Bluff (population approximately 17,000) lies just to the west of Stoddard County, roughly fifty miles due west of Sikeston.

As the complaint indicates, both Cape Girardeau and Poplar Bluff have acute

care hospitals that can provide the services at issue in this dispute. FMG's proposed geographic market, however, eliminates any competitive pressure MDMC may experience from the Cape Girardeau and Poplar Bluff hospitals by only including areas to the south and east of Sikeston. Notably, FMG's proposal excludes the entirety of Stoddard County, roughly five miles west of Sikeston, and all of Scott County north of Sikeston. In other words, the proposed geographic market includes Sikeston and areas east and south of Sikeston, but excludes all the areas north and west of Sikeston. Defendants' location in Sikeston is thus on the extreme northwest edge of the proposed geographic market. And while the complaint makes repeated references to things FMG does in Scott County, its proposed geographic market excludes almost all of the geographic area of that county.

This arrangement makes sense only if one were attempting to artificially boost MDMC's market power. The law, however, does not permit such gerrymandering. As defendants point out, the Eighth Circuit has previously considered the market for some medical services in this part of Southeast Missouri. In Federal Trade Commission v. Tenet Health Care Corp., 186 F.3d 1045 (8th Cir. 1999), the FTC challenged the merger of two hospitals in Poplar Bluff. The FTC proposed a relevant geographic market for primary and secondary inpatient hospital

care services consisting of an area within a fifty-mile radius from downtown Poplar Bluff. That proposed geographic market excluded the main hospital in Sikeston, MDMC, and two large hospitals in Cape Girardeau, all three of which were within a sixty-five mile radius of downtown Poplar Bluff. The Court held that the proposed geographic market was too narrow, reasoning as follows:

> The FTC's contention that the merged hospitals would have eighty-four percent of the market for inpatient primary and secondary services within a contrived market area that stops just short of including a regional hospital (MDMC) that is closer to many patients than the Poplar Bluff hospitals strikes us as absurd. The proximity of many patients to hospitals in other towns, coupled with the compelling and essentially unrefuted evidence that the switch to another provider by a small percentage of patients would constrain a price increase, shows that the FTC's proposed market is too narrow.

186 F.3d at 1052-54.

I agree with FMG that Tenet does not dictate the outcome here, but neither can it be ignored. This case involves the same industry in the same geographic region as Tenet. FMG points out that the relevant product market in this case is distinct from the market for inpatient primary and secondary services discussed in Tenet. According to FMG, patients would be willing to travel greater distances for hospital services than they would be willing to travel for general services like x-rays and MRI's. Additionally, FMG points out that Tenet was decided on full evidentiary record developed in five-day hearing. This motion, in contrast, must be

decided without the benefit of discovery.

Unfortunately for FMG, no amount of discovery will cure the fatal flaws in its implausible geographic market. First, like the plaintiff in Tenet, FMG has drawn its proposed geographic market based on where the defendant's customers actually go for services, not where the customers could practically turn for services. In Tenet, the proposed fifty-mile radius from Poplar Bluff was based on the fact that ninety percent of the Poplar Bluff hospital patients came from that area. 186 F.3d at 1052. Similarly, FMG's proposed geographic market "includes the areas which 80-90% of MDMC and FMG's patients come for services within the Product Market." FMG further alleges that "the substantial majority of patients within the Geographic Market do not travel to other facilities for the services within the Product Market." Accepting this allegation as true does not change the conclusion, as in Tenet, that consumer preference, alone, is not a sufficient basis on which to determine a geographic market. See also Freeman, 69 F.3d at 269-70 (plaintiff's failure to present evidence in support of its proposed geographic market beyond competitor perception and customer preferences was fatal to its antitrust claim); Bathke, 64 F.3d at 345-47 (same); Morgenstern 29 F.3d at 1296-97 (same).

Instead, the crucial question remains where consumers of the relevant services could reasonably turn for alternative care. Freeman, 69 F.3d at 270. While

-10-

this is normally a fact question, there are cases where a proposed market failed as a matter of law.  In <u>Davies</u>, the court dismissed the case without the benefit of discovery by recognizing the locations of competitors in relation to the plaintiff's proposed geographic area.  In that case, the plaintiff proposed a twenty-three county area surrounding the Quad Cities as the relevant geographic market for cardiac surgery.  994 F. Supp. at 1100.  Upon further review, however, the court noted that many of the counties included in the proposed geographic market were closer to other hospitals in cities outside the proposed geographic market.  Under these circumstances, the court concluded that "it would be unreasonable to infer residents of the Quad Cities area could not practically turn to hospitals in [these other cities] for cardiac surgery."  <u>Id.</u> at 1101.

Similarly, the geographic reality of the region at issue in this case demonstrates that some residents of FMG's proposed geographic market could practically turn to Cape Girardeau for ancillary medical services and outpatient diagnostic and surgical services.  For example, FMG's proposed geographic market includes "small adjoining areas of Illinois and Kentucky."  As any atlas will reveal, those areas of Illinois and Kentucky that are closest to Sikeston are roughly the

same distance from Cape Girardeau.[2] Thus, I find it unreasonable to infer that some residents of FMG's proposed geographic market could not practicably turn to Cape Girardeau for services should MDMC engage in anticompetitive pricing.[3]

Finally, the allegation that the relevant market goes east and south, but not north and west, of the alleged monopolist's place of business defies common sense. Most of the artificially narrow geographic markets rejected by the case law involve a too-small area surrounding a particular location. This implausible market not only has that problem, but it also essentially cuts off half of the circle surrounding Sikeston, with no reasonable explanation, other than to artificially boost MDMC's market power.

For all these reasons, I conclude that FMG has failed, as a matter of law, to adequately plead a viable relevant geographic market. Because this failure is fatal to each of the four antitrust claims asserted in FMG's complaint, I need not address the validity of FMG's proposed product market or the question of whether FMG has

---

[2] Cairo, Illinois, for example, which lies just over the Mississippi River from Missouri and is the Illinois town closest to Sikeston, is thirty-one miles from Sikeston and thirty-three miles from Cape Girardeau.

[3] MDMC contends that admissions made by FMG in a prior state action further supports this conclusion. While I agree with MDMC that a court may take judicial notice of admissions made in a prior action when ruling on a motion to dismiss, Harris v. New York State Dept. of Health, 202 F.Supp.2d 143, 173 n.13 (S.D.N.Y. 2002), I need not rely on FMG's admissions in the other case to decide this case.

adequately pled an actionable conspiracy in Counts II and IV.

Further, because the dismissal of Counts I and II eliminates the two claims on which this Court's original jurisdiction was based, I have the discretion to decide whether to retain supplemental jurisdiction over the remaining state-law claims. See 28 U.S.C. § 1367 (c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994). As the Eighth Circuit has recognized, when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Barstad v. Murray County, 420 F.3d 880, 888 (8th Cir. 2005) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)). I find this to be especially true where, as here, the federal law claims are dismissed before either party has expended significant time or resources in discovery. Thus, I will dismiss the remaining state-law claims in FMG's complaint without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss Counts I-IV of the complaint [#12] is granted.

**IT IS FURTHER ORDERED** that the remaining state law claims, Counts V-VIII, are dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS FURTHER ORDERED** that defendants' motion to take judicial notice [#14] is denied as moot.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of August, 2006.